UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DARLA J. BOCK, | ) |
| Plaintiff, | ) |
| vs. | ) No. 1:16-cv-03334-MJD-TWP |
| NANCY A. BERRYHILL, | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Darla J. Bock ("Bock") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3)(A). For the reasons set forth below, the Commissioner's decision is **REVERSED AND REMANDED**.

**I.     Background**

Bock filed an application for DIB on April 19, 2013, alleging an onset of disability date of December 10, 2012. [Dkt. 10-2 at 14.] Bock alleges disability due to osteoarthritis and allied disorders, spine disorders, affective disorders, and fibromyalgia.[1] [Dkt. 10-2 at 16.] Bock's application was initially denied on June 19, 2013, and denied again on August 20, 2013, upon reconsideration. [Dkt. 10-2 at 14.] Bock timely filed a written request for a hearing, which was held on May 20, 2015, before Administrative Law Judge Kimberly Sorg-Graves. ("ALJ"). *Id.*

---

[1] Bock and the Commissioner recited the relevant factual and medical background in more detail in their opening briefs. [*See* Dkt. 19 and Dkt. 21.] Because these facts involve Bock's confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs but will articulate specific facts as needed below.

1

The ALJ issued a decision on July 20, 2015, again denying Bock's applications for SSI. [Dkt. 10-2 at 11.] On October 7, 2016, the Appeals Council denied Bock's request for review, making the ALJ's decision the final decision for purposes of judicial review. [Dkt. 10-2 at 1.] Bock timely filed her Complaint with this Court on December 9, 2016, which Complaint is now before the Court.

## II. Legal Standard

To be eligible for DIB or SSI, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and she is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three and cannot perform her past relevant work but she can perform certain other available

---

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for Disability Insurance Benefits and Supplemental Security Income claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provisions as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

2

work, she is not disabled. 20 C.F.R. § 404.1520. Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity (RFC), identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work-related activities. S.S.R. 96-8p.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into his reasoning" and "build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

### III.    The ALJ's Decision

The ALJ first determined that Bock has not engaged in substantial gainful activity since December 10, 2012, the alleged onset date. [Dkt. 10-2 at 16.] At step two, the ALJ determined that Bock "has the following severe impairments: osteoarthritis and allied disorders; spine

disorders; and affective disorders." *Id.* However, at step three, the ALJ found that Bock does not have an impairment or combination of impairments that meets or medically equals a listed impairment. [Dkt. 10-2 at 17.] In making this determination, the ALJ considered Listings 1.02 (Major Dysfunction of a Joint), 1.04 (Disorders of the Spine), and 12.04 (Depression). *Id.*

The ALJ next analyzed Plaintiff's residual functional capacity ("RFC"). She concluded that Plaintiff had the RFC to perform a range of light work except:

> [N]o climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs; occasionally balancing, stooping, kneeling, crouching, and crawling; no more than frequent over the head reaching; no more than occasional bilateral fingering; able to understand, remember, and carryout (sic) semiskilled tasks; and no more than occasional superficial interaction with the general public and superficial interaction with coworkers and supervisors.

In finding these limitations, the ALJ considered Bock's "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." [Dkt. 10-2 at 19.] The ALJ then acknowledged that the evidence presented could reasonably show that Bock suffers from the symptoms she alleges, but the ALJ found Bock's statements "not entirely credible." [Dkt. 10-2 at 20.] At step four, the ALJ concluded the Plaintiff is unable to perform any past relevant work. [Dkt. 10-2 at 24.] The ALJ thus proceeded to step five, at which time she received testimony from the vocational expert indicating that someone with Plaintiff's education, work experience, age, and RFC would be able to perform unskilled light occupations such as a ticket taker, shipping and receiving weigher, and baker helper. Because these jobs existed in significant numbers in the national economy, the ALJ concluded that Plaintiff was not disabled. [Dkt. 10-2 at 26.]

4

## IV. Discussion

Bock asserts the ALJ committed two errors that require remand: (1) the ALJ failed to properly address Bock's moderate limitations in maintaining concentration, persistence, or pace in the RFC and hypothetical to the VE; and (2) the ALJ failed to articulate a reason for her rejection of a medical opinion.

### A. Residual Functional Capacity

Bock argues that the ALJ erred by failing to accommodate Bock's moderate limitations in concentration, persistence, or pace in Bock's RFC and the hypothetical questions posed to the VE. As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record. *See*, *e.g.*, *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 615 (7th Cir. 2010); *see also Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). This includes any deficiencies the claimant may have in concentration, persistence, or pace ("CPP"). *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014).

The Seventh Circuit has repeatedly rejected—most recently in *Lanigan v. Berryhill*—the notion that limiting a claimant to "simple, routine, and repetitive tasks" adequately addresses CPP deficiencies. 2017 WL 3172428, at *6 (7th Cir. July 26, 2017). "These terms refer to 'unskilled work,' which the regulations define as work that can be learned by demonstration in less than 30 days. *See* 20 C.F.R. §§ 404.1568, 404.1520. We have explained that the speed at which work can be learned is unrelated to whether a person with mental impairments—i.e., difficulties maintaining concentration, persistence, or pace—can perform such work." *Id*. *See also Yurt*, 758 F.3d at 858–59; *Stewart*, 561 F.3d at 685 (7th Cir. 2009); *Craft v. Astrue*, 539 F.3d 668, 677–78 (7th Cir. 2008).

Here, the ALJ found that Bock has moderate difficulties with CPP, and then devised an RFC that provides (and communicated to the VE that) Bock is able to perform *more* than simple, routine tasks. Bock's RFC includes the ability to "understand, remember, and carryout (sic) semiskilled tasks." [Dkt. 10-2 at 19.] Bock argues these findings are inconsistent, and the Court agrees. If, as is established by Seventh Circuit precedent, a limitation to unskilled work does not adequately account for a moderate limitation in CPP, it is difficult to see how a limitation to semi-skilled work would suffice. *See Klein v. Colvin*, 2017 WL 192753, at *5–6 (S.D. Ill. 2017) (finding that ALJ's limitation to semi-skilled work in claimant's RFC did not adequately account for moderate concentration difficulties).

The Commissioner defends the ALJ's decision by pointing to the Mental RFC Assessment completed by the state agency consultant, to which the ALJ designated great weight. Dr. Horton, the consulting psychiatrist, indicated in the "check the box" worksheet form that plaintiff had a moderate limitation in understanding and remembering detailed instructions and had sustained concentration and persistence limitations. [Dkt. 10-3 at 9-10.] In the narrative, Dr. Horton opined that the evidence suggested Bock "can understand, remember, and carry-out (sic) semi-skilled tasks" and "can attend to tasks for sufficient periods of time to tasks (sic)". [Dkt. 10-3 at 11.] The Commissioner asserts Dr. Horton's assessment supports both the ALJ's finding of moderate CPP limitations and the RFC for semi-skilled tasks.

It is true that Dr. Horton's report states both of those findings: Dr. Horton's worksheet form denotes a moderate limitation in understanding and remembering detailed instructions and the narrative indicates Bock is able perform semi-skilled tasks. But adopting each of Dr. Horton's findings (the worksheet form and the narrative) does not make them internally consistent, and Dr. Horton's findings clearly are inconsistent. It unreasonable to find that a

6

person who is moderately impaired in understanding and remembering is also able to understand, remember and carry out semi-skilled tasks. It follows, then, that the ALJ's adoption of Dr. Horton's internally inconsistent findings does not constitute substantial evidence in support of the RFC.

It is clear the ALJ formulated Bock's RFC using language from Dr. Horton's narrative ("understand, remember, and carry-out semi-skilled tasks"). However, the ALJ may rely on the state agency consultant's narrative only where it "adequately encapsulates and translates" the worksheet observations. *Varga v. Colvin*, 794 F.3d 809, 816. *See also Vineyard v. Colvin*, 2016 WL 6872949, at *5 (S.D. Ill. 2016). In this case, the narrative and the worksheet observations are at odds with one another. Instead of citing additional evidence to resolve the inconsistency and build the "logical bridge" from the evidence of mental impairment to the RFC, the ALJ granted Dr. Horton's inconsistent report great weight and adopted its inconsistent findings. Therefore, this case must be remanded.

### B. Dr. Rasmussen's Report

Bock also argues the ALJ erred by failing to adequately explain the rejection of the opinion of consultative examiner Dr. Rasmussen. [Dkt. 10-10 at 36-40.] The ALJ noted Dr. Rasmussen's finding that Bock "may not be able to do more than her current level of work [commercial embroidery] 12 to 16 hours a week" and Dr. Rasmussen's estimation of Bock's current Global Assessment of Functioning ("GAF") at 54 (indicating moderate functional limitations). [Dkt. 10-2 at 24.] The ALJ gave Dr. Rasmussen's opinion little weight because it was "not well supported by the claimant's treatment history or the clinical findings of treating sources." *Id.* Bock asserts the ALJ did not sufficiently explain her reasoning for rejecting Dr. Rasmussen's opinion.

An ALJ must consider all medical opinions in the record. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *see* 20 C.F.R. § 404.1527(b). "[W]hen the evidence comes in the form of a medical opinion from a state agency physician, the agency's own regulations and rules require that the ALJ 'not ignore these opinions and must explain the weight given to the opinions in their decisions.'" *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011); SSR 96–6p. The Court has already found that the ALJ committed reversible error in her analysis of Dr. Horton's opinion and the resulting RFC determination. Although the ALJ minimally articulated reasons for granting Dr. Rasmussen's opinion little weight, on remand the ALJ should more thoroughly address the reasons underlying the weight given to each medical opinion, and the opinion of Dr. Rasmussen in particular.

V. **Conclusion**

The standard for review of the Commissioner's denial of benefits is narrow. The Court reviews the record as a whole, but neither does it reweigh the evidence nor substitute its judgment for the ALJ's. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Where, as here, the ALJ did not build a logical bridge between the evidence in the record and the ALJ's conclusion, the Court must remand. As the Court cannot find a complete logical bridge in the ALJ's five-step sequential analysis, the Commissioner's decision is vacated and **REMANDED** for further proceedings.

Dated:  31 OCT 2017

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

8

Distribution:

Joseph R. Wambach
KELLER & KELLER
joew@2keller.com

Nicholas Thomas Lavella
KELLER & KELLER
nlavella@2keller.com

Timothy E. Burns
KELLER & KELLER
timb@2keller.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov

Jill Z. Julian
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
jill.julian@usdoj.gov